**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| JOÃO GODOY, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
|  | : 1:05-CV-0675-RWS |
| THE OFFICE OF BAR ADMISSIONS, THE BOARD TO DETERMINE FITNESS OF BAR APPLICANTS, HULETT H. ASKEW, and RUNETTE BELL HINES, in their official capacities, | : |
| Defendants. | : |

## ORDER

This case is before the Court on Plaintiff's Motion for Summary Judgment [17], Plaintiff's Motion for Reconsideration [26], and Defendants' Motion for Summary Judgment [30]. The Court has reviewed the record, and now enters the following Order.

### Background

Plaintiff, a Brazilian national who immigrated to this country and obtained permanent resident alien status, brought this action against, among

others, the State Bar of Georgia and the Board to Determine Fitness of Bar

Applicants (the "Fitness Board").  Plaintiff alleges that the Fitness Board's

practice of requiring certain immigration documentation from non-citizens and

"all foreign-born applicants" is violative of the Supremacy and Equal Protection

Clauses, as well as his substantive due process rights.  Plaintiff additionally

contends that Defendants' failure to provide him with a hearing and the

opportunity to call and cross-examine witnesses violates his procedural due

process rights.  Finally, through an amendment to his Complaint, Plaintiff

claims that Defendants engaged in an unlawful invasion of his privacy when

they submitted his bar application to the Supreme Court without requesting that

sensitive materials be placed under seal.

On March 23, 2006, this Court entered an Order on Defendants' Motion

to Dismiss and Plaintiff's Motion for Summary Judgment, which, due to an

oversight by defense counsel, was unopposed.  In that Order, the Court granted

Defendants' Motion to Dismiss insofar as Plaintiff requested that this Court

compel specific actions *vis-a-vis* his bar application, both as outside the Court's

original jurisdiction under District of Columbia Court of Appeals v. Feldman,

460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), and on the grounds that

2

Plaintiff's requests were moot.  (<u>See</u> Order of Mar. 23, 2006 [22] at 6 & n.3.)

Plaintiff's other claims, however, were allowed to proceed and the remainder of

Defendants' Motion to Dismiss was denied.  (<u>See</u> <u>id.</u> at 6-9.)

      With respect to Plaintiff's Motion for Summary Judgment, and

specifically, Plaintiff's Supremacy Clause, substantive due process, and

procedural due process claims, the Court found summary judgment to be

inappropriate and denied Plaintiff's Motion.  (<u>See</u> <u>id.</u> at 13-22.)  In contrast to

these claims, the Court expressly reserved ruling on Plaintiff's Equal Protection

claim.  Although the Court recognized that, in light of Defendants' failure to

respond to Plaintiff's motion and the standard of review applicable to national

origin and alienage-based classifications, the record may support the entry of

summary judgment in Plaintiff's favor on this claim, the Court was "reluctant to

enjoin the practices of a state bar," especially those implicating determinations

of fitness to practice law, "based upon the errant omissions of counsel."  (<u>Id.</u> at

23.)  As such, the Court directed Defendants to file a response to Plaintiff's

Equal Protection claim within twenty days from the entry of that Order and

reserved ruling on his claim pending further briefing.  (<u>See</u> <u>id.</u> at 23-25.)

Defendants have now filed their response, as well as a cross-motion for summary judgment *vis-a-vis* Plaintiff's Equal Protection claim.  For his part, Plaintiff moves the Court to reconsider its decision allowing Defendants to file a belated response to his motion for summary judgment.

### Discussion

### I.       Motion to Reconsider

Plaintiff has filed a motion to reconsider, asking the Court to rescind its allowance of additional time for Defendants to file a response in opposition to his motion for summary judgment *vis-a-vis* the Equal Protection claim.  He argues, with some force, that while Rule 6(b)(2) authorizes a district court to enlarge the time for a litigant to do a specific act following the expiration of the original deadline, such leave should be given "upon motion" and where "the failure to act was the result of excusable neglect."  FED. R. CIV. P. 6(b)(2). Here, Plaintiff points out that the time for Defendants to respond to his motion for summary judgment had long expired when the Court issued its March 23, 2006 Order, and urges that the Court's allowance of additional time *sua sponte* and without a showing of excusable neglect constitutes error.

4

The Court concedes that were "excusable neglect" held an absolute prerequisite for an extension of time in this case, Defendants would not be permitted to make the relevant filing.  Their defense of this litigation has been lacking.  Inexplicably, they have yet to file an answer in this litigation.  They failed to respond to Plaintiff's motion for summary judgment, notwithstanding this Court's explicit recognition that, "given certain seemingly novel constitutional issues presented in this case, . . . argument from both sides in the course of the adversarial process may aid it in evaluating certain legal theories presented in Plaintiff's Complaint."  (<u>See</u> May 20, 2005 Order [4] at 4-5.)  And, when their response was ultimately filed with the Court, it was unaccompanied by the required response to Plaintiff's statement of undisputed material facts.  Moreover, Defendants have failed to either respond to Plaintiff's motion for reconsideration, or offer any reply in support of their motion for summary judgment.  Charitably stated, their participation in this litigation has fallen decidedly short of that which the Court would expect from a body entrusted by the State to help oversee the practice of law.

Generally, such neglect by a party would militate against any leniency or departure from the strict procedural guidelines established by the Local Rules.

5

<u>See</u> LR 7.1B, NDGa ("Any party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than ten (10) days after service of the motion, except that in cases of motion for summary judgment the time shall be twenty (20) days after the service of the motion."). Counsel for Defendants is admonished that, should they continue to demonstrate such apathy in litigation before this Court, they can expect to meet their fair share of adverse results. In this case, however, the Court recognizes that, were it to award Plaintiff relief on a procedural technicality, it is the citizens of the State of Georgia, not the Defendants, that would be forced to endure the most harmful consequences of the adverse ruling. The resultant potential for individuals ill-suited to the practice of law being allowed to sit for the bar exam counsels in favor of a resolution on the merits.

Insofar as Plaintiff urges that this allowance is not one within the Court's authority to provide, the Court disagrees. To be sure, authorities addressing this issue are few. A review of applicable precedent, however, illustrates that absent serious, actual prejudice to another party, district courts, often with circuit approval, have exercised the inherent authority to manage their docket so as to grant enlargements of time even when such extensions fall outside the literal

6

scope of Rule 6(b).  See Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d

642 (5th Cir. 2002) (affirming, over a Rule 6(b) objection, district court's *sua*

*sponte* decision to permit litigant to file Rule 54 motion for costs outside the

time provided for in the Federal Rules of Civil Procure and the district court's

local rules); Yesudian v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001)

(affirming district court's enlargement of time for litigant to make a filing

notwithstanding lack of any explanation respecting "excusable neglect" or a

motion specifically requesting such relief); Tran v. Captain Glyn, Inc., 909 F.

Supp. 727, 731 (D. Hawaii 1995) (permitting litigant to file late cross-motion

for summary judgment and opposition to opponent's motion for summary

judgment); see also Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 367 (5th Cir.

1995) (district court did not err in accepting motion for summary judgment one

day late); cf. Crutcher v. Coleman, 205 F.R.D. 581, 586 (D. Kan. 2001)

(allowing defendant to file answer six months after original deadline,

notwithstanding her failure to provide "an adequate reason[,]" where failure

caused no prejudice to the plaintiff); E.E.O.C. v. TruGreen Ltd. P'ship, 185

F.R.D. 552, 554 (W.D. Wisc. 1998) (not error for magistrate to *sua sponte*

AO 72A
(Rev.8/82)

accept late-filed motion for protective order).[1]  But see Donald v. Cook County

Sheriff's Dep't, 95 F.3d 548, 558 (7th Cir. 1996) (holding that district court

committed reversible error when, contrary to Rule 6(b), it *sua sponte* enlarged

the time for defendants to respond to the complaint and the enlargement

"seriously prejudiced [the *pro se* prisoner-plaintiff's] prosecution of his case");

Demint v. NationsBank Corp., 208 F.R.D. 639, 642-43 (M.D. Fla. 2002)

(refusing to grant enlargement of time where litigant failed to explain reasons

for neglect; explaining, "A contrary conclusion necessarily implies that a court

may excuse one party's omission *to the material detriment* of another party

––––––––––––––––––––

[1] Indeed, the Supreme Court has itself appeared to acknowledge the discretion of a district court to enlarge a response period even in circumstances where Rule 6(b) does not seem to expressly contemplate such relief.  In Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990), the Court rejected an argument that the district court had erred in refusing to *sua sponte* extend the time within which a party was permitted to submit affidavits.  The Court began by enumerating the various reasons such an extension would have been inappropriate under Rule 6(b)(2), such as the lack of a motion and a nonexistent showing of excusable neglect.  See 497 U.S. at 896-97.  Notwithstanding its identification of these manifest failings, the Court went on to indulge the possibility that the district court might yet have allowed the extension of time, remarking: "Perhaps it is true that the District Court could have overcome all the obstacles we have described–apparent lack of a motion, of a showing, and of excusable neglect–to admit the affidavits at issue here.  But the proposition that it was *compelled* to receive them–that it was an abuse of discretion to *reject* them-cannot be accepted." 497 U.S. at 898.  That indulgence suggests to this Court, especially in light of the post-Lujan authorities cited *supra*, that the Federal Rules did not divest it of all authority to grant the challenged extension.

8

without understanding the conduct that occasioned the omission." (emphasis supplied)).

What is more, Rule 6 itself vests this Court with broad discretion to accept affidavits, such as those offered by Defendants here, in opposition to a motion for summary judgment. See FED. R. CIV. P. 6(d) ("opposing affidavits may be served not later than 1 day before [a scheduled] hearing [on a written motion], *unless the court permits them to be served at some other time*" (emphasis supplied)); L.D. Woods v. Allied Concord Fin. Corp., 373 F.2d 733, 734 (5th Cir. 1967) (relying on Rule 6(d) to uphold district court's acceptance of late-filed affidavits in opposition to motion for summary judgment);[2] Nestle Co. v. Chester's Mkt., Inc., 571 F. Supp. 763, 772 (D. Conn. 1983), rev'd on other grounds, 756 F.2d 280 (2d Cir. 1985) (decision to accept late-filed affidavit in opposition to motion for summary judgment "is solely within the court's discretion").

In light of the foregoing, the Court does not accept Plaintiff's argument that it was without the authority to permit Defendants additional time to

---

[2] The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

respond to his motion for summary judgment.  Plaintiff's Motion for

Reconsideration [26] is **DENIED**.

## II.     Motions for Summary Judgment: The Equal Protection Claim

The only claim remaining on Plaintiff's motion for summary judgment,

and the only one pursued by Defendants in their cross-motion, is that alleging a

violation of the Equal Protection Clause.  It is Plaintiff's contention that

Defendants, by requiring additional documentation from non-citizen and

"foreign-born" applicants (including "a copy of front and back of Permanent

Resident Card, [a] copy of citizenship page from passport, a copy of USCIS

Form I-485 (Application to Register Permanent Residence or to Adjust Status),

and [a] Notice of Action form issued by INS"), but not demanding such

documentation from applicants who purport to be United States citizens, have

established a facially discriminatory state policy subject to strict scrutiny.  (See

Pl.'s Resp. to Cross-Mot. for Summ. J. [32] at 6.)

Plainly, a state bar may not erect barriers to the practice of law in

violation of the Equal Protection Clause.  See, e.g., In re Griffiths, 413 U.S.

717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973) (court rule restricting admission to

the bar to citizens of the United States held unconstitutional); Schware v. Bd. of

Bar Exam'rs of N.M., 353 U.S. 232, 238-39, 77 S. Ct. 752, 1 L. Ed. 2d 796

(1957) ("A State cannot exclude a person from the practice of law or from any

other occupation in a manner or for reasons that contravene the Due Process or

Equal Protection Clause of the Fourteenth Amendment.").  Moreover, where, as

here, that classification is predicated upon considerations of alienage (non-U.S.

citizen) or national origin ("foreign-born"), it becomes subject to strict judicial

scrutiny.  See In re Griffiths, 413 U.S. at 721; Fernandez v. State of Georgia,

716 F. Supp. 1475, 1478-79 (M.D. Ga. 1989).  "In order to justify the use of a

suspect classification, a State must show that its purpose or interest is both

constitutionally permissible and substantial, and that its use of the classification

is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of

its interest."  In re Griffiths, 413 U.S. at 721-22.

        Accepting Plaintiff's assertion that the policy at issue here is subject to

this sifting level of scrutiny, it is the view of this Court that Defendants have

carried their burden of showing the targeted classification is a valid one.  It is

Defendants' position that the challenged request for documents is designed to

allow a non-United States citizen or foreign-born applicant to "demonstrat[e]

that he or she is lawfully in the United States and will remain in legal status

11

through the administration of the bar exam he or she wishes to take." (See Aff.
of Hulett H. Askew [30] at ¶ 5.)  They contend that the Bar's interest in
obtaining such proof is constitutionally permissible and substantial, in that
"compliance with all laws, including immigration laws, is a standard expected
of all applicants and lawyers." (Id.)

The Supreme Court has recognized that "a State has a constitutionally
permissible and substantial interest in determining whether an applicant
possesses 'the character and general fitness requisite for an attorney and
counselor-at-law.' " In re Griffiths, 413 U.S. at 722.  This Court finds
consonance in these permissible interests and those articulated by Defendants
here.  An applicant's willingness to maintain an unlawful residence in the
United States, like his ongoing participation in other illegal activities, has an
undeniable bearing on that applicant's character and fitness to practice law.

The question becomes, then, whether the classification and requirements
at issue here are necessary to the accomplishment of that permissible end.  The
Court is persuaded that they are.

Citizenship is the right of all persons born in the United States.  See
Rivera v. Ashcroft, 394 F.3d 1129, 1136-37 (9th Cir. 2005) (citing United

12

States v. Wong Kim Ark, 169 U.S. 649, 702, 18 S. Ct. 456, 42 L. Ed. 890

(1898)).  Moreover, federal authorities addressing expatriation make plain that

the status of citizenship is immune from involuntary divestiture:

> The Constitution does not permit American
> citizenship to be so easily shed . . . .  The citizenship
> defined by the [Fourteenth] Amendment is one
> "which a citizen keeps unless he voluntarily
> relinquishes it."  [Cit.]  This rule has its root in the
> fact that "[i]n our country the people are sovereign
> and the Government cannot sever its relationship to
> the people by taking away their citizenship."  [Cit.]

Id.  But cf. 8 U.S.C. § 1481(a) (enumerating voluntary acts, taken by a citizen

with intention of relinquishing United States nationality, that may result in loss

of citizenship).

Such is not the case with resident alien status, which is often burdened by

temporal restrictions, among others.  Defendants in this case seek

documentation designed to uncover both the citizenship status of all foreign-

born applicants (including those who purport to be United States citizens), as

well as the temporal duration of lawful residency for applicants who are not

citizens of the United States.  (See Pl.'s Mot. for Summ. J. [17] at Ex. 4.)  While

Plaintiff insists that access to the entire universe of documentation Defendants

13

seek is not invariably necessary to ascertain the fact and duration of lawful

residency, all the documents requested by Defendants clearly pertain to such

attributes.[3]  What is more, Defendants emphasize, persuasively, that seeking

piecemeal verification of lawful residency from outside sources, such as the

Immigration and Naturalization Service, is a complex and time-consuming

process–one that has the potential to substantially and detrimentally prolong the

Bar's determination of an applicant's fitness to sit for a particular bar exam.

(See Aff. of Hulett H. Askew [30] at ¶ 6.)

        In light of the foregoing, the Court concludes that the practices

challenged by Plaintiff here are not violative of the Equal Protection Clause.

Defendants' Motion for Summary Judgment [30], insofar as it seeks such a

_____

        [3] Indeed, the facts of this case underscore the State Bar's need to have access to the very documentation Plaintiff protests that he should not be required to provide. Plaintiff applied to take the February 2005 bar examination in the summer of 2004. (See Compl. [2] at ¶ 8.)  When Plaintiff produced the documents requested by Defendants, however, his green card indicated that his residency had expired in 1997. (See Aff. of Runette Bell Hines [30] at ¶ 4.)  His passport, moreover, contained the notation that his Temporary Form I-551 Admission for Permanent Residence was valid only until October 2, 2003. (Id.)  The documentation he provided to the Bar additionally revealed that he had applied for naturalization sometime in or before October of 2000.  A Notice of Action issued by the INS in response to his application contemplated further action by the agency within the year, but Plaintiff supplied no evidence of such action despite the lapse of over three years' time. (Id.)

AO 72A
(Rev.8/82)

determination, is **GRANTED**.  Plaintiff's Motion for Summary Judgment [17]

is **DENIED**.

### Conclusion

Plaintiff's Motion for Summary Judgment [17] and Motion for

Reconsideration [26] are **DENIED**.  Defendants' Motion for Summary

Judgment [30], insofar as it seeks dismissal of Plaintiff's Equal Protection

claim, is **GRANTED**.

At this point, Plaintiff's remaining constitutional claims, while previously

held by the Court to be legally infirm (at least on the present record), are

nonetheless viable, as Defendants have not filed any motion seeking their

dismissal.  In addition, neither party has yet moved for summary judgment on

Plaintiff's invasion of privacy claim.

Because the Court believes that these matters may still be amenable to

resolution on motion, without the necessity of trial, the parties shall be given

leave, within twenty (20) days from the date appearing on this Order, to file

motions to dismiss and/or for summary judgment respecting these claims.

AO 72A
(Rev.8/82)

**SO ORDERED** this __24th__ day of July, 2006.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

16

AO 72A
(Rev.8/82)